1   Robert B. Jobe (Cal. State Bar #133089)
    LAW OFFICE OF ROBERT B. JOBE
2   550 Kearny Street, Suite 200
    San Francisco, CA 94108
3   (415) 956-5513 (phone)
    (415) 840-0308 (fax)
4
    Attorney for Plaintiffs.
5



6

7                UNITED STATES DISTRICT COURT

8              NORTHERN DISTRICT OF CALIFORNIA

9
    ROBERT B. JOBE,                      )
10  GIANCARLO MASSETTI,                  )   No. C 07 4391
    ROGELIO CARDOSO-TLASECA,             )
11                                       )   Alien # 77-383-391 (Massetti)
        Plaintiffs,                      )            78-467-817 (Cardoso-Tlaseca)
12                                       )
        v.                               )
13                                       )
    U.S. IMMIGRATION AND CUSTOMS         )
14  ENFORCEMENT; JULIE MYERS,            )   COMPLAINT FOR RELIEF UNDER
    ASSISTANT SECRETARY, U.S.            )   THE ADMINISTRATIVE PROCEDURE
15  IMMIGRATION AND CUSTOMS              )   ACT
    ENFORCEMENT; ANTHONY M.              )
16  AIELLO, ASSISTANT FIELD OFFICE       )
    DIRECTOR, SAN FRANCISCO U.S.         )
17  IMMIGRATION AND CUSTOMS              )
    ENFORCEMENT; RONALD E. LEFEVRE,      )
18  CHIEF COUNSEL, U.S. IMMIGRATION      )
    AND CUSTOMS ENFORCEMENT, SAN         )
19  FRANCISCO OFFICE OF THE CHIEF        )
    COUNSEL; JAMES STOLLEY, DEPUTY       )
20  CHIEF COUNSEL, U.S. IMMIGRATION      )
    AND CUSTOMS ENFORCEMENT, SAN         )
21  FRANCISCO OFFICE OF THE CHIEF        )
    COUNSEL; JOHN K. CROWTHER,           )
22  ACTING OFFICER-IN-CHARGE, ELOY       )
    U.S. IMMIGRATION AND CUSTOMS         )
23  ENFORCEMENT; PATRICIA VROOM,         )
    CHIEF COUNSEL, U.S. IMMIGRATION      )
24  AND CUSTOMS ENFORCEMENT, ELOY        )
    OFFICE OF THE CHIEF COUNSEL;         )
25  ALBERTO GONZALES, U.S.               )
    ATTORNEY GENERAL,                    )
26                                       )
        Defendants.                      )
27  _____ )

28      1.      By and through their undersigned attorney, Plaintiffs, Robert B. Jobe ("Mr.

Complaint for Relief Under the Administrative Procedure Act      1

Jobe"), Giancarlo Massetti ("Mr. Massetti") and Rogelio Cardoso-Tlaseca ("Mr. Cardoso-Tlaseca"), as and for their complaint, allege as follows:

## FACTUAL HISTORY

### Giancarlo Massetti

2.      Mr. Massetti is an Italian citizen who has dedicated his life to public service. As a Lieutenant Sergeant within the Guardi di Finanza ("GdF"), Mr. Massetti was charged with auditing corporations to determine whether they had reported all of their income and paid all of their taxes.[1]  In that position, Mr. Massetti uncovered widespread corruption within the GdF.  As a result of Mr. Massetti's investigation, a total of seven officers in the GdF in Bergamo were arrested and convicted of corruption.  As a direct result of his whistleblowing, Mr. Massetti encountered intense harassment, escalating threats, a break-in at his home, and was subjected to false criminal charges by the Milan District Attorney's office,

3.      Mr. Massetti entered the United States pursuant to the Visa Waiver Pilot Program ("VWPP").  Although he submitted an application for asylum, the former Immigration and Naturalization Service referred that application to the Immigration Judge ("IJ") pursuant to 8 C.F.R. § 208.2(b), which grants the IJ exclusive jurisdiction over an asylum application filed by a VWPP entrant.[2]

4.      On June 24, 2004, the IJ issued a decision finding Mr. Massetti's testimony to be "credible." Exh. 6 (*IJ Decision*).  "After a careful analysis of all the documentary and testimonial evidence," the IJ determined that Mr. Massetti had "met his burden of establishing by specific, direct, and credible evidence that he [was] persecuted based upon his political opinion, that is, his opposition to political corruption." *Id.*  The IJ further found that he "established a well-

_____

[1]  The GdF, or "treasury department," is a branch of the Minstero de la Finanze and is composed of multiple departments, each with specific duties, including regulating drug trafficking, customs, air force, navy, anti-contraband and tax audits.

[2]  Pursuant to the *Department of Homeland Security Reorganization Plan, Homeland Security Act of 2002*, Pub. L. No. 107-296, 116 Stat. 2135 (2002), 6 U.S.C. §§ 101-557, as of March 1, 2003, the INS was abolished and its functions were transferred to the Department of Homeland Security ("DHS").

1    founded fear of future persecution" and that the government did not prove that "conditions in his

2    home country have changed to such an extent that [he] no longer has" such a fear. *Id.* Finally,

3    the IJ concluded that it would not be reasonable for Mr. Massetti to safely relocate within Italy.

4    *Id.* Consequently, she granted his applications for asylum and withholding of removal. *Id.*

5        5.    The government appealed, and on July 7, 2004, the Board of Immigration Appeals

6    ("the Board" or "the BIA") issued a decision upholding the IJ's determination that Mr. Massetti

7    is credible but denying all of his applications for relief. In doing so, the Board "conclude[d] that

8    [Mr. Massetti] has not established that his actions combating his corrupt superiors were directed

9    'toward a governing institution' versus only against those specific individuals involved whose

10    corruption, in the absence of a more pervasive problem, was aberrational." Exh. 5 (*BIA Decision*

11    *7/7/2004*). Accordingly, the Board concluded that the mistreatment suffered by Mr. Massetti was

12    not "on account of political opinion." Mr. Massetti timely petitioned the U.S. Court of Appeals

13    for the Ninth Circuit ("the Ninth Circuit") for review of that decision. On August 10, 2004, Mr.

14    Massetti filed a motion for a stay of deportation pending adjudication of his petition for review.[3]

15        6.    On September 1, 2004, Mr. Massetti reported to San Francisco ICE, as requested,

16    and was subsequently released on the Intensive Supervision Appearance Program ("ISAP"). As

17    part of that program, Mr. Massetti agreed to wear an electronic monitoring bracelet and report to

18    an automated telephonic monitoring system. After a motorcycle accident, and due to severe

19    anxiety, Mr. Massetti removed the electronic monitoring bracelet. On November 22, 2004, Mr.

20    Massetti reported to the ICE office in San Francisco with his attorney. At that time, he was taken

21    into ICE custody. Despite numerous pleas, ICE refused to release Mr. Massetti from custody,

22    refused to administer his prescription medications for anxiety and HIV infection, and

23    categorically refused to entertain a bond request. Accordingly, Mr. Massetti withdrew his

24    request for a stay of removal but specifically informed the Court that he intended to continue

25    _____

26        [3] *See De Leon v. INS*, 115 F.3d 643, 644 (9th Cir. 1997) ("The filing of a motion for stay
or a request for a stay . . . will stay a petitioner's deportation temporarily until the court rules on
27    the stay motion."). *See also* Ninth Circuit General Order 6.4(c)("Upon the filing of a motion or
request for stay of removal or deportation, the order of removal or deportation is temporarily
28    stayed until further order of the court.").

1  litigating his petition for review.  On or about December 7, 2004, Defendants removed Mr.

2  Massetti from the U.S. to France.

3      7.      Mr. Massetti's removal presented no impediments to his continued litigation of

4  his petition for review, because an alien's removal from the United States during the pendency of

5  a petition for review does not constitute a withdrawal of such petition.  *See Zazueta-Carillo v.*

6  *Ashcroft*, 322 F.3d 1166 (9th Cir. 2003); 8 U.S.C. § 1252(a); *Mendez-Alcarez v. Gonzales*, 464

7  F.3d 842, 844 (9th Cir. 2006).  By enacting the Illegal Immigration Reform and Immigrant

8  Responsibility Act of 1996 (IIRIRA), Congress *explicitly* "made clear its desire to expedite

9  removal proceedings," thereby allowing respondents to litigate their petitions for review from

10  abroad.  *Zazueta-Carillo,* 322 F.3d at 1174.  *See also id.* at 1171 ("We now may entertain a

11  petition after the alien has departed . . . Congress's desire to expedite removal by voluntary

12  assent now does not conflict with the alien's ability to pursue a petition for review.").

13      8.      In an unpublished decision, filed on October 3, 2005, a three member panel of the

14  Ninth Circuit granted Mr. Massetti's petition for review and remanded his proceedings to the

15  Board.  In its decision, the Court held that:

16      The harassment that Massetti encountered after his whistleblowing, including
        frequent job transfer, the connections between Massetti's superiors and the Milan
17      District Attorney's office, and the repeated false charges by the Milan District
        Attorney's office establish the requisite nexus between Massetti's political opinions
18      and what happened to him.

19  Exh. 2 (*Massetti v. Gonzales*, 151 Fed.Appx. 519, 520 (9th Cir. 2005)).  Concluding that the

20  Board "was incorrect to characterize the harm suffered by Massetti as private retaliation or the

21  corruption as aberrational," the Court agreed with the IJ's holding that "Massetti showed that his

22  actions were directed toward a governing institution rather than against a few specific

23  individuals."  *Id.*  In doing so, the Court remanded the proceedings to the Board to determine

24  "whether the retaliation suffered by Massetti rose to the level of persecution within the meaning

25  of 8 U.S.C. § 1158(b)."  *Id.*

26      9.      On July 14, 2006, the Board issued a decision stating:

27      Upon careful review of the record, we conclude that the numerous job shifts,
        escalating threats and ultimately a break-in at the applicant's home in which one of
28      the intruders was shot and killed, viewed in light of the Circuit Court's holding is

Complaint for Relief Under the Administrative Procedure Act      4

1    such to rise to the level of persecution. . .

2    Accordingly, the Board's decision in this case dated July 7, 2004, is vacated and the
      Department of Homeland Security's appeal is dismissed. The applicant is eligible
3    for, and should be granted, asylum, dependent upon the required security checks.

4    Exh. 4 (*BIA Decision 7/14/06*). Although the government moved the Board to reconsider its

5    decision, the Board declined to do so. Exh. 3 (*BIA Decision, 12/26/2006*). The San Francisco

6    Immigration Court subsequently scheduled Mr. Massetti for a master calendar hearing on August

7    2, 2007, at which his appearance was waived.

8        10.    Since July 31, 2007, counsel for Mr. Massetti has been attempting to effectuate

9    his return to the United States through the San Francisco ICE office without success. At the

10   master calendar hearing on August 2nd, an ICE associate chief counsel indicated to the court that

11   the government had "no intention" of facilitating Mr. Massetti's return to the U.S. Moreover, the

12   government requested that the court set a hearing at which Mr. Massetti's appearance would be

13   required and, should he not appear for that hearing, asked that the Immigration Judge order him

14   removed *in absentia*. The IJ granted that request and set a hearing for February 6, 2008, at which

15   Mr. Massetti's presence is required. Exh. 1 (*Hearing Notice*).

16                          **Rogelio Cardoso-Tlaseca**

17       11.    Mr. Cardoso-Tlaseca is a native and citizen of Mexico who entered the United

18   States without inspection on April 10, 1988. He is married to a United States citizen, Hilda

19   Jimenez, with whom he has two children – a ten year-old son, Roger Cardoso, and a seven year-

20   old daughter, Jasmine Cardoso – both of whom are United States citizens. On August 24, 2000,

21   Mr. Cardoso-Tlaseca was charged with one count of cultivating marijuana, in violation of

22   California Health and Safety Code § 11358. Six days later, he pled guilty to cultivating

23   marijuana "for personal use," and on November 6, 2000, he was granted deferred entry of

24   judgement for 18 months. After successfully completing the deferred judgement program, Mr.

25   Cardoso-Tlaseca withdrew his guilty plea and the court dismissed the cultivation charge pursuant

26   to California Penal Code § 1203.4(a) on November 20, 2001.

27       12.    On March 8, 2001, Mr. Cardosa-Tlaseca filed an application to adjust his status to

28

Complaint for Relief Under the Administrative Procedure Act        5

that of a lawful permanent resident.[4]   On February 6, 2003, when he appeared for an interview

on that application, he was arrested by ICE.  Approximately one month later, he was served with

a Notice to Appear, alleging that he is "subject to removal" from the United States pursuant to:

- 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled; and

- 8 U.S.C. § 1182(a)(2)(A)(ii), as an alien who has been convicted of violating a law or regulation relating to a controlled substance.

In support of the latter charge, ICE alleged that Mr. Cardoso-Tlaseca had been convicted on

August 30, 2000 in the Superior Court of California, in and for the County of Tulare, for the

offense of Cultivating Marijuana, in violation of California Health and Safety Code § 11358.

13.    At a hearing before an immigration judge in Eloy, Arizona on May 13, 2003, Mr.

Cardoso-Tlaseca argued that his conviction for cultivating marijuana *for personal use* was akin

to a conviction for simple possession of a controlled substance.  Then, relying on the Ninth

Circuit's decision in *Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000), he argued that

because his conviction had been expunged, the government could not use it to establish his

deportability under 8 U.S.C. § 1182(a)(2)(A)(ii).  The IJ, however, was unconvinced.  In an oral

decision rendered that same day, he found Mr. Cardoso-Tlaseca removable on both of the

charges contained in the Notice to Appear.  Exh. 12 (*IJ Decision*).  After concluding that Mr.

Cardoso-Tlaseca had been convicted of a "drug trafficking offense," the IJ found that he had no

relief available and ordered him removed to Mexico.

14.    On June 10, 2003, Mr. Cardoso-Tlaseca filed a timely appeal with the Board.

While that appeal was pending, he filed a motion in the Superior Court of California to vacate his

conviction.  In his motion, Mr. Cardoso-Tlaseca argued that his conviction under California

Health and Safety Code § 11358 was legally invalid, because his guilty plea was obtained in

violation of his rights under the Fifth, Sixth and Fourteenth Amendments of the U.S.

---

[4]  Because Mr. Cardoso-Tlaseca's wife filed an immigrant visa petition in his behalf on January 14, 1998, Mr. Cardoso-Tlaseca was eligible to avail himself of 8 U.S.C. § 1255(i), which allows aliens who "entered the United States without inspection" or who are "within one of the classes enumerated in [8 U.S.C. § 1255(c)]" to apply for adjustment of status upon the remission of $1,000 in addition to the normal processing fee.

1  Constitution.  Specifically, Mr. Cardoso-Tlaseca argued that his guilty plea was not knowing,

2  intelligent, free or voluntary because: 1) at the time of his plea and sentencing, all parties,

3  including the court, were unaware that Mr. Cardoso would be subject to deportation pursuant 8

4  U.S.C. § 1182(a)(2)(A)(I)(ii), with no possibility of relief; and 2) the court, in violation of

5  California Penal Code § 1016.5 and *Boykin v. Alabama*, 395 U.S. 238 (1969), failed to inform

6  Mr. Cardoso-Tlaseca of potential immigration consequences of the plea or take any of the

7  required waivers (jury trial, confrontation, self-incrimination, etc.) until after the plea had already

8  been entered.

9       15.    On September 30, 2003, the Board summarily affirmed the IJ's order that Mr.

10  Cardoso-Tlaseca be removed from the United States to Mexico on the charges contained in the

11  Notice to Appear.  Exh. 11 *(BIA Decision, 9/30/2003)*.  One week later, Mr. Cardoso-Tlaseca

12  was deported to Mexico.  Exh. 10 *(BIA Decision, 1/30/2004)*.

13       16.    On October 15, 2003, the California Superior Court granted Mr. Cardoso-

14  Tlaseca's motion and vacated his conviction as legally invalid.  The cultivation charge was

15  stricken, the criminal complaint was amended to charge simple possession of marijuana (a

16  misdemeanor violation of California Health & Safety Code § 11357(c)), and Mr. Cardoso-

17  Tlaseca entered a plea of guilty to the new charge.  On November 26, 2003, Mr. Cardoso-Tlaseca

18  was sentenced to a term of probation until December 17, 2003.  After successfully completing his

19  probation, Mr. Cardoso-Tlaseca expunged his conviction (under California Health & Safety Code

20  § 11357(c)) pursuant to California Penal Code § 1203.4 on December 17, 2003.  On December

21  29, 2003, Mr. Cardoso-Tlaseca moved the Board to reopen his removal proceedings.  Because

22  his conviction under California Health & Safety Code § 11358 had been vacated and was a "key

23  part of the government's case in the [removal] proceeding," he argued, "the Board must reopen

24  and remand these proceedings to the immigration judge for further evidentiary proceedings."  On

25  January 30, 2004, however, the Board denied Mr. Cardoso-Tlaseca's motion in a brief order,

26  stating:

27       It is undisputed that [Mr. Cardoso-Tlaseca] was removed from the United States on
        October 8, 2003, after the Board rejected [Mr. Cardoso-Tlaseca's] appeal. [Mr. Cardoso-
28       Tlaseca's] removal was therefore lawfully executed. *Compare Wiedersperg v. INS*, 896

F.2d 1179 (9th Cir. 1990). Under the regulations at 8 C.F.R. § 1003.2(d), "[a] motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States." The Board thus lacks jurisdiction to reopen and reconsider [Mr. Cardoso-Tlaseca's] appeal at this time, and the motion must be denied. *See* 8 C.F.R. § 1003.1(d)(2)(H). We note that on October 15, 2003, the Superior Court of California in and for the County of Tulare granted [Mr. Cardoso-Tlaseca's] motion to vacate a conviction underlying one of the bases of [Mr. Cardoso-Tlaseca's] inadmissibility. The fact that the conviction was vacated prior to the filing of his motion, would not alter our conclusion. Accordingly, the motion is denied.

Exh. 11 (*BIA Decision, 1/30/2004*).

      17.     Although Mr. Cardoso-Tlaseca petitioned the Ninth Circuit for review of that decision, he also asked the Board to reconsider. On March 18, 2004, however, the Board rendered a one paragraph decision refusing to reconsider its earlier ruling. Exh. 10 (*BIA Decision, 3/18/2004*). The Board said:

> This case was before the Board last on January 30, 2004, when we denied [Mr. Cardoso-Tlaseca's] motion to reopen for lack of jurisdiction. We stated that it was undisputed that [Mr. Cardoso-Tlaseca] had been removed from the United States on October 8, 2003, after the Board's rejection of his appeal and that his removal had been lawfully executed. We likewise lack jurisdiction over the present motion to reconsider, for the same reasons. *See* 8 C.F.R. § 3.2(d)(2003) (now numbered as § 1003.2(d)). Even if we were to address the merits of the current motion, we would deny it because [Mr. Cardoso-Tlaseca] has not demonstrated any error in our decision of January 30, 2004, on the record then before us, upon consideration of the contentions in this motion. *See Matter of Cerna*, 20 I & N Dec. 399 (BIA 1991). We reiterate that [Mr. Cardoso-Tlaseca's] case is distinguishable from *Wiedersperg v. INS*, 896 F.2d 1179 (9th Cir. 1990)(allowing an alien who had been deported to reopen proceeding where the sole ground of deportability against him had been vacated). We note that [Mr. Cardoso-Tlaseca] was found removable under both sections 212(a)(6)(A)(i) and 212(a)(2)(A)(I) of the Immigration and Nationality Act, 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(2)(A)(I).

*Id.* Mr. Cardoso-Tlaseca petitioned the Ninth Circuit for review of that decision as well, and consolidated his two petitions.

      18.     On August 21, 2006, the Ninth Circuit issued a published decision granting Mr. Cardoso-Tlaseca's petition for review.[5] Exh. 8 (*Cardoso-Tlaseca v. Gonzales,* 460 F.3d 1102 (9th Cir. 2006)). In doing so, the Court affirmed that "a deportation based upon an invalid conviction is not 'legally executed'" and, "therefore, the defective deportation may be reopened

---

    [5] The Court granted Mr. Cardoso-Tlaseca's petition for review of the Board's denial of his motion to reopen and dismissed his petition for review of the Board's denial of his motion to reconsider as moot.

1  after the petitioner has left the country." 460 F.3d at 1106, *citing Estrada-Rosales v. INS*, 645

2  F.2d 819, 821 (9th Cir. 1981). *See also Wiedersperg v. INS*, 896 F.2d 1179 (9th Cir. 1990). The

3  Court went on to find that the Board erred in limiting the holding in *Wiedersperg* "to cases in

4  which the vacated state court conviction is the *sole* ground of deportability." *Cardoso-Tlaseca*,

5  460 F.3d at 1107 (internal quotation marks omitted and emphasis in original). Clarifying that

6  "both *Wiedersperg* and *Estrada-Rosales* apply where the conviction was a *key part* of the

7  deportation proceeding," the Court concluded that Mr. Cardoso-Tlaseca's conviction was,

8  indeed, a key part of the government's case. *Id.* (internal quotation marks omitted and emphasis

9  added). Because, "[a]ccording to the BIA, a vacated conviction remains valid for immigration

10  purposes if the conviction was vacated for reasons, 'unrelated to the merits of the underlying

11  criminal proceedings,' that is, for equitable, 'rehabilitation or immigration hardship[ ]' reasons,"

12  *Matter of Pickering*, 23 I. & N. Dec. 621, 624 (BIA 2003), *reversed by Pickering v. Gonzales,*

13  454 F.3d 525 (6th Cir. 2006), the Ninth Circuit remanded the proceedings to the Board to

14  determinate in the first instance whether Mr. Cardoso-Tlaseca's § 11358 cultivation conviction

15  was vacated on the merits. *Id.*

16       19.    On March 27, 2007, the Board vacated its prior orders, held that Mr. Cardoso-

17  Tlaseca's conviction was vacated on "substantive grounds" (and, therefore, not considered a

18  "conviction" for immigration purposes and cannot serve as the basis for removability), and

19  reopened and remanded the case to the IJ for a new removal hearing. Exh. 9 (*BIA Decision,*

20  *3/27/2007*). Shortly thereafter, Mr. Cardoso-Tlaseca's counsel made numerous attempts to

21  coordinate Mr. Cardoso-Tlaseca's return to the U.S. with ICE in Eloy. ICE, however, has taken

22  the position that despite the Ninth Circuit's and the Board's decisions finding his deportation

23  unlawful, the government is under no obligation to facilitate Mr. Cardoso-Tlaseca's return to the

24  U.S. to participate in his removal proceedings. Although Mr. Cardoso-Tlaseca's appearance was

25  waived at his first master calendar hearing, on July 23, 2007, he is currently scheduled for a

26  second master calendar hearing in Eloy on August 29, 2007; the IJ has denied counsel's request

27  to waive Mr. Cardoso-Tlaseca's appearance. Exh. 7 (*Hearing Notice*).

28

**PLAINTIFFS**

20.    Mr. Jobe, a native and citizen of the United States, is an attorney who has been licensed to practice in the state of California since January 13, 1988.  He received a Bachelor of Arts degree from the University of Michigan in 1982 and a Juris Doctorate from the University of Michigan Law School in 1987.  Mr. Jobe has been representing Mr. Massetti and Mr. Cardoso-Tlaseca in their immigration matters since approximately June 1, 1998 and December 4, 2003, respectively.  Although Mr. Massetti and Mr. Cardoso-Tlaseca have been deported from the United States, each subsequently prevailed in his appeal to the Ninth Circuit.  Thereafter, the Board found Mr. Massetti eligible for asylum pending clearance of background checks and ordered that Mr. Cardoso-Tlaseca's proceeding be reopened in order for him to present additional evidence in support of his application for adjustment of status.  In the face of the rulings of the Ninth Circuit and the Board, however, Defendants have refused to facilitate the return of Mr. Massetti and Mr. Cardoso-Tlaseca, effectively preventing them from appearing in their continued removal proceedings and directly interfering with Mr. Jobe's ability to represent them on remand.

21.    Mr. Massetti is a native and citizen of Italy, who prevailed in his petition for review before the U.S. Court of Appeals for the Ninth Circuit ("the Ninth Circuit").  *See* Exh. 2 (*Massetti v. Gonzales*, 151 Fed.Appx. 519 (9th Cir. 2005) (unpublished)).  Accordingly, the Board of Immigration Appeals ("the Board" or "the BIA") reopened his proceedings and remanded his case to a San Francisco Immigration Judge to grant his application for asylum upon clearance of his background security checks.  Because Defendants refuse to facilitate Mr. Massetti's return to the U.S., however, he is unable to provide his fingerprints to Defendants and unable to attend his immigration hearing, currently scheduled for February 6, 2008.

22.    Mr. Cardoso-Tlaseca is a native and citizen of Mexico, who prevailed in his petition for review before the Ninth Circuit.  *See* Exh. 8 (*Cardoso-Tlaseca v. Gonzales*, 460 F.3d 1102 (9th Cir. 2006)).  On remand, the Board vacated its decisions and reopened and remanded Mr. Cardoso-Tlaseca's case to the Eloy, Arizona Immigration Court for further proceedings.  Because Defendants refuse to facilitate Mr. Cardoso-Tlaseca's return to the U.S., he is unable to attend his immigration hearing, currently scheduled for August 29, 2007.

**DEFENDANTS**

23.     Immigration and Customs Enforcement ("ICE") is the component within the Department of Homeland Security that is responsible for the detention and removal of non-citizens.

24.     Julie Myers is the Assistant Secretary of ICE division. Ms. Myers leads the detention and removal functions of ICE and is sued in her official capacity.

25.     Anthony M. Aiello is the Assistant Field Office Director for San Francisco's U.S. Immigration and Customs Enforcement.   Mr. Aiello has the power to facilitate Mr. Massetti's return to the U.S. and is, therefore, sued in his official capacity.

26.     Ronald LeFevre is sued in his official capacity as the Chief Counsel of ICE's San Francisco Office of the Chief Counsel.  As counsel for the government, Mr. LeFevre is conspiring to violate Mr. Massetti's right to a fundamentally fair removal proceeding by disregarding the decisions of the Ninth Circuit and the Board, refusing to take any action to facilitate Mr. Massetti's return to the United States, and working to ensure that Mr. Massetti is unable to attend his upcoming removal hearing.

27.     James Stolley is sued in his official capacity as the Deputy Chief Counsel of ICE's San Francisco Office of the Chief Counsel.  As counsel for the government, Mr. Stolley is conspiring to violate Mr. Massetti's right to a fundamentally fair removal proceeding by disregarding the decisions of the Ninth Circuit and the Board, refusing to take any action to facilitate Mr. Massetti's return to the United States, and working to ensure that Mr. Massetti is unable to attend his upcoming removal hearing.

28.     John K. Crowther is the Acting Officer-in-Charge of the Eloy ICE office.  Mr. Crowther has the power to facilitate Mr. Cardoso-Tlaseca's return to the U.S. and is, therefore, sued in his official capacity.

29.     Patricia Vroom is sued in her official capacity as the Chief Counsel of ICE's Eloy Office of the Chief Counsel.  As counsel for the government, Ms. Vroom is conspiring to violate Mr. Cardoso-Tlaseca's right to a fundamentally fair removal proceeding by disregarding the decisions of the Ninth Circuit and the Board, refusing to take any action to facilitate Mr.

1    Cardoso-Tlaseca's return to the United States, and working to ensure that Mr. Cardoso-Tlaseca is

2    unable to attend his upcoming removal hearing.

3        30.    Defendant, Alberto Gonzales, is sued in his official capacity as the Attorney

4    General of the United States.  He retains certain responsibilities for administration and

5    enforcement of the immigration laws pursuant to 8 U.S.C. § 1103.

6                                **JURISDICTION**

7        31.    Jurisdiction over the subject matter of this civil action is conferred on this Court

8    by 28 U.S.C. § 1331, as a civil action arising under the Constitution, laws, or treaties of the

9    United States; 5 U.S.C. § 702, as a challenge to agency action under the Administrative

10   Procedure Act ("APA"); and 28 U.S.C. §§ 2201 and 2202, as a civil action seeking, in addition to

11   other remedies, a declaratory judgment.

12                                **VENUE**

13       32.    Venue is properly in this district pursuant to 28 U.S.C. §§ 1391(e)(2) and (e)(3),

14   because a substantial part of the events giving rise to this claim occurred in this district, including

15   the federal litigation, one plaintiff resides and works in this district and no real property is

16   involved in this action.

17                          **INTRA-DISTRICT ASSIGNMENT**

18       33.    Because a substantial portion of the events that gave rise to this lawsuit occurred

19   in the County of San Francisco, this case should be assigned to the Court's San Francisco

20   division.

21                                **STANDING**

22       34.    The APA affords a right of review to a person who is "adversely affected or

23   aggrieved by agency action."  5 U.S.C. § 702.  Defendants' illegal action has immeasurably

24   prolonged Mr. Massetti's and Mr. Cardoso-Tlaseca's ability to return to the United States and

25   participate in their immigration proceedings and interfered with Mr. Jobe's ability to effectively

26   represent his clients.

27

28

## FIRST CAUSE OF ACTION

### (Violation of the Administrative Procedure Act)

35.    Plaintiffs repeat, allege, and incorporate paragraphs 1 through 34 above as though fully set forth herein.

36.    Plaintiffs are persons aggrieved by agency action under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*  By preventing Mr. Massetti's and Mr. Cardoso-Tlaseca's return to the U.S. to participate in their removal proceedings, Defendants have acted arbitrarily and capriciously and otherwise contrary to law in violation of the Immigration and Nationality Act and 5 U.S.C. § 706.

## SECOND CAUSE OF ACTION

### (Violation of the Due Process Clause)

37.    The allegations contained in paragraphs 1 through 36 above are repeated and re-alleged as though fully set forth herein.

38.    Having prevailed in their respective petitions for review for review and BIA appeals, on remand, the Board ordered that Mr. Massetti be granted asylum pending the requisite background checks and ordered that Mr. Cardoso-Tlaseca be granted a new removal hearing. Although Mr. Massetti and Mr. Cardoso-Tlaseca are each entitled to a new removal proceeding before an IJ, Defendants are acting to deprive them of that proceeding and, in fact, are working to ensure to have them ordered removed *in absentia*.  By preventing Mr. Massetti and Mr. Cardoso-Tlaseca from appearing at their upcoming removal hearings, the Defendants are acting to deprive Mr. Massetti and Mr. Cardoso-Tlaseca of a fundamentally fair hearing in violation of the Due Process clause.

## THIRD CAUSE OF ACTION

### (Violation of the Immigration and Nationality Act and the Fifth Amendment)

39.    The allegations contained in paragraphs 1 through 38 above are repeated and re-alleged as though fully set forth herein.

40.    Although individuals in immigration proceedings do not enjoy the Sixth Amendment's guarantee of an attorney's assistance at government expense, they do have the

1    right to obtain counsel of their own choice. *Ray v. Gonzales*, 439 F.3d 582, 586-87 (9th Cir.

2    2006). "[T]he extent to which aliens are entitled to effective assistance of counsel during

3    [immigration] proceedings is governed by the Fifth Amendment due process right to a fair

4    hearing." *Lara-Torres v. Ashcroft*, 383 F.3d 968, 972 (9th Cir. 2004), *amended by* 404 F.3d 1105

5    (9th Cir. 2005) (emphasis omitted). *See also* 8 U.S.C. § 1362 (a person in removal proceedings

6    "shall have the privilege of being represented (at no expense to the Government) by such counsel,

7    authorized to practice in such proceedings, as he shall choose.")

8         40.      By preventing Mr. Massetti and Mr. Cardoso-Tlaseca from re-entering the U.S.,

9    the Defendants have grossly interfered with their ability to consult with their attorney and prepare

10    for their upcoming removal hearings in violation of 8 U.S.C. § 1362 and the Due Process clause.

11                               **RELIEF REQUESTED**

12        WHEREFORE, Plaintiffs pray that this Court:

13        (1)      Accept jurisdiction over this action;

14        (2)      Declare Defendants' refusal to facilitate Mr. Massetti's and Mr. Cardoso-

15    Tlaseca's return to the United States to be a violation of the Immigration and Nationality Act, the

16    Fifth Amendment's Due Process clause, and the Administrative Procedure Act;

17        (3)      Order Defendants to immediately facilitate Mr. Massetti's and Mr. Cardoso-

18    Tlaseca's prompt return to the United States;

19        (4)      Grant attorney's fees and costs of court under 28 U.S.C. § 2412, 28 U.S.C. §

20    1920, Fed. R. Civ. P. 54(d), and other authority; and

21        (5)      Grant such other and further relief as this Court deems just and proper under the

22    circumstances.

23    DATED: August 24, 2007                  Respectfully submitted,

24

25

26                                      Robert B. Jobe
                                         LAW OFFICE OF ROBERT JOBE

27                                          550 Kearny, Suite 200
                                         San Francisco, CA 94108

28                                          (415) 956-5513
                                         (415) 840-0308

                                         Attorney for Plaintiffs