Exhibit
1

IMMIGRATION COURT
120 Montgomery Street, Suite 800
San Francisco, CA  94104

RE:  _Giancarlo Moscetti_     FILE:     A# _77-383-391_

TO:  _Atty. PICIUCCO_

### NOTICE OF HEARING IN REMOVAL PROCEEDINGS

Please take notice that the above captioned case has been scheduled for a

(Regular / Master) Hearing before an Immigration Judge on

_February 6, 2008_ at _8:30 a.m._ at

### 120 Montgomery Street, 9TH Floor, Courtroom #17
### San Francisco, CA 94104

You may be represented in these proceedings, at no expense to the Government, by an attorney or other individual who is authorized and qualified to represent persons before an Immigration Court.  If you wish to be represented, your attorney or representative must appear with you at the hearing prepared to proceed.

Failure to appear at your hearing except for exceptional circumstances may result in one or more of the following actions:

1.  You may be taken into custody by the Immigration and Naturalization Service and held for further action.

2.  Your hearing may be held in your absence under section 240(b)(5) of the Immigration and Nationality Act.  An order of removal will be entered against you if the Immigration and Naturalization Service establishes by clear, unequivocal and convincing evidence that a) this notice was provided to you or your attorney and b) you are removable.

IF YOUR ADDRESS IS NOT LISTED ON THE NOTICE TO APPEAR , OR IF IT IS NOT CORRECT, WITHIN FIVE DAYS OF THIS NOTICE YOU MUST PROVIDE TO THE IMMIGRATION COURT, SAN FRANCISCO, CA THE ATTACHED FORM EOIR-33 WITH YOUR ADDRESS AND/OR TELEPHONE NUMBER AT WHICH YOU CAN BE CONTACTED REGARDING THESE PROCEEDINGS.  EVERY TIME YOU CHANGE YOUR ADDRESS AND/OR TELEPHONE NUMBER, YOU MUST INFORM THE COURT OF YOUR NEW ADDRESS AND/OR TELEPHONE NUMBER WITHIN 5 DAYS OF THE CHANGE, BY FILING THE ATTACHED FORM EOIR-33. ADDITIONAL FORMS OF THE EOIR-33 CAN BE OBTAINED FROM THE COURT WHERE YOU ARE SCHEDULED TO APPEAR.  IN THE EVENT YOU ARE UNABLE TO OBTAIN A FORM EOIR-33, YOU MAY PROVIDE THE COURT IN WRITING WITH YOUR NEW ADDRESS AND/OR TELEPHONE NUMBER BUT YOU MUST CLEARLY MARK THE ENVELOPE "CHANGE OF ADDRESS."  CORRESPONDENCE FROM THE COURT, INCLUDING HEARING NOTICES, WILL BE SENT TO THE MOST RECENT ADDRESS YOU HAVE PROVIDED, AND WILL BE CONSIDERED SUFFICIENT NOTICE TO YOU, AND THESE PROCEEDINGS CAN GO FORWARD IN YOUR ABSENCE.

A list of free Legal Service Providers has been given to you.  For information regarding the status of your case, call toll free 1-800-898-7180.

Application: _____     Due by: _____

FINGERPRINTS REQUIRED WITHIN 14 DAYS OF: _____

Clock Stopped?   YES / NO / N/A

cc: Assistant District Counsel, DHS, SFR   _EKC_

### CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY:  [ ] MAIL    [X] PERSONAL SERVICE
TO:  [ ]ALIEN    [ ]ALIEN c/o Custodial Officer    [√]ALIEN's ATTY/REP     [X]DHS

DATE:  _8/2/07_     By COURT STAFF: _____
   Attachments:  [ ]EOIR-33  [ ]EOIR-28  [ ] Legal Services List  [ ]Other

Exhibit
2

Westlaw.

151 Fed.Appx. 519                                                                          Page 1

151 Fed.Appx. 519, 2005 WL 2417148 (C.A.9)
**(Cite as: 151 Fed.Appx. 519)**

**c**
**Massetti** v. Gonzales
C.A.9,2005.
This case was not selected for publication in the Federal Reporter.Please use FIND to look at
the applicable circuit court rule before citing this opinion. (FIND CTA9 Rule 36-3.)
United States Court of Appeals,Ninth Circuit.
Giancarlo **MASSETTI**, Petitioner,
v.
Alberto R. GONZALES, Attorney General, Respondent.
**No. 04-73597.**
**Agency No. A77-383-391.**

Argued and Submitted Sept. 15, 2005.
Decided Oct. 3, 2005.

**Background:** Alien from Italy filed petition for review of decision of Board of Immigration
Appeals (BIA) overturning immigration judge's (IJ) decision to grant asylum and withholding
of removal.

**Holding:** The Court of Appeals held that although Italian alien established that his
whistleblowing was directed toward a governing institution, rather than specific individual, as
required for asylum based on persecution on account of political opinion, remand was required
for determination of whether retaliation suffered by alien rose to level of persecution.

Petition granted; remanded.
West Headnotes
**Aliens, Immigration, and Citizenship 24 ☞540**

24 Aliens, Immigration, and Citizenship
    24VII Asylum, Refugees, and Withholding of Removal
        24VII(D) Persecution
            24k534 Grounds for Persecution; Protected Groups
                24k540 k. Political Opinion in General. Most Cited Cases
    (Formerly 24k53.10(3))

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

151 Fed.Appx. 519                                                      Page 2

151 Fed.Appx. 519, 2005 WL 2417148 (C.A.9)
**(Cite as: 151 Fed.Appx. 519)**


**Aliens, Immigration, and Citizenship 24 ⚖626**

24 Aliens, Immigration, and Citizenship
    24VII Asylum, Refugees, and Withholding of Removal
       24VII(G) Judicial Review or Intervention
          24k621 Determination
            24k626 k. Remand. Most Cited Cases
    (Formerly 24k53.10(3))
Although Italian alien established that his whistleblowing was directed toward a governing institution, rather than specific individual, as required for asylum based on persecution on account of political opinion, remand was required for determination of whether retaliation suffered by alien rose to level of persecution. Immigration and Nationality Act, §§ 208(b), 242(a)(1), 8 U.S.C.A. §§ 1158(b), 1252(a)(1).


**\*520** Robert B. Jobe, Law Office of Robert B. Jobe, San Francisco, CA, for Petitioner.
Ronald E. LeFevre, Chief Counsel, Office of the District Counsel, San Francisco, CA, Richard M. Evans, Nancy E. Friedman, S. Nicole Nardone, U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Before GRABER, McKEOWN, and W. FLETCHER, Circuit Judges.

MEMORANDUM[FN*]


    FN* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

**\*\*1** Petitioner Giancarlo **Massetti** petitions the court for review of a Board of Immigration Appeals (BIA) decision overturning the immigration judge (IJ)'s decision to grant asylum and withholding of removal. The IJ held that **Massetti** had credibly established persecution on account of his political opinion and had shown a well-founded fear of future persecution. We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1).

The BIA's determination must be upheld if supported by reasonable, substantial, and probative evidence in the record. *INS v. Elias-Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

151 Fed.Appx. 519                                                                                    Page 3

151 Fed.Appx. 519, 2005 WL 2417148 (C.A.9)
**(Cite as: 151 Fed.Appx. 519)**

In *Grava v. INS,* 205 F.3d 1177, 1181 (9th Cir.2000), we held that "[w]histleblowing against one's supervisors at work is not, as a matter of law, always an exercise of political opinion. However, where the whistle blows against corrupt government officials, it may constitute political activity sufficient to form the basis of persecution on account of political opinion." **Massetti's** exposure of widespread corruption within Italy's Guardia di Finanza arose from his anti-corruption political convictions and was directed against governmental corruption as a whole, not merely against a few specific individuals. The U.S. Department of State's Country Report, as well as the 2000 report of the group Transparency International, detail the pervasive influence corruption has had and continues to have in Italy, in particular on its judicial system. The harassment that **Massetti** encountered after his whistleblowing, including frequent job transfers, the connections between **Massetti's** superiors and the Milan District Attorney's office, and the repeated false charges by the Milan District Attorney's office establish the requisite nexus between **Massetti's** political opinions and what happened to him.

The BIA was incorrect to characterize the harm suffered by **Massetti** as private retaliation or the corruption as aberrational. We hold that the evidence compels the conclusion reached by the IJ, that **Massetti** showed that his actions were directed toward a governing institution rather than against a few specific individuals. However, the BIA did not reach the issue of whether the retaliation suffered by **Massetti** rose to the level of persecution within **\*521** the meaning of 8 U.S.C. § 1158(b). We therefore remand to the BIA under *INS v. Orlando Ventura,* 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam).

**PETITION GRANTED. REMANDED.**

C.A.9,2005.
Massetti v. Gonzales
151 Fed.Appx. 519, 2005 WL 2417148 (C.A.9)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit
3



U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

---

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*


**Jobe, Robert B., Esquire**                    **Office of the District Counsel/SFR**
**550 Kearny Street, Ste 200**                   **P.O. Box 26449**
**San Francisco, CA 94108-0000**                 **San Francisco, CA 94126-6449**


**Name: MASSETTI, GIANCARLO**                    A77-383-391


<u>Date of this notice</u>: 12/26/2006

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk


Enclosure


Panel Members:
    HURWITZ, GERALD S.

RECEIVED
DEC 2 9 2006

BY: --------------------

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:   A77-383-391 - San Francisco                    Date:        DEC 2 6 2006

In re: GIANCARLO MASSETTI

IN ASYLUM PROCEEDINGS

MOTION

ON BEHALF OF RESPONDENT:    Robert B. Jobe, Esquire

ON BEHALF OF DHS:          W. Manning Evans, Esquire
                           Assistant Chief Counsel

ORDER:

PER CURIAM.  The Department of Homeland Security (DHS)] moves the Board pursuant to 8 C.F.R. § 1003.2 to reconsider our decision dated July 14, 2006.  The applicant, from Italy, was granted asylum on June 24, 2003, by the Immigration Judge.  On July 7, 2004, this Board sustained the Department of Homeland Security (DHS) appeal.  The applicant filed a petition for review in the United States Court of Appeals for the Ninth Circuit.

While that petition was pending, on November 4, 2004, the applicant filed a withdrawal of a motion for stay of removal at the Ninth Circuit indicating he wished to be deported in order to seek medical care in Italy for several medical conditions, and that he intended to pursue his petition for review.  On December 4, 2004, the Ninth Circuit granted the motion to withdraw the motion for a stay of removal pending review.  The record contains, inter alia, a departure verification document (Form I-296) indicating the applicant was removed on December 7, 2004 (Government's Brief on Remand from the United States Court of Appeals, Exh. L).

On October 3, 2005, the Ninth Circuit concluded the Board was incorrect in characterizing the harms suffered as private retaliation or the corruption as aberrational, and held that the Immigration Judge was correct in concluding that the applicant's actions were directed toward a governing institution rather than individuals.  The matter was remanded because "the BIA did not reach the issue of whether the retaliation suffered by Massetti rose to the level of persecution within the meaning of 8 U.S.C. § 1158(b)."  *Massetti v. Gonzales,* 151 Fed. Appx. 519 (9th Cir. 2005).

On July 14, 2006, this Board issued a decision pursuant to the remand in which we held that the harm rose to the level of persecution.  We therefore dismissed the DHS appeal of the grant of asylum and withholding, and remanded the matter for security checks.  The instant motion argues we erred by not specifically addressing the DHS arguments on appeal that the applicant abandoned his asylum application when he accepted deportation, and that the matter should be remanded to address firm resettlement.

A77-383-391

We are bound by the Ninth Circuit ruling in this matter, which was rendered with full knowledge of the applicant's deportation, and specifically directed our review to address the issue of whether the harm amounted to persecution. The motion does not specify any errors of law or fact that would warrant reopening, and is not supported by pertinent authority. 8 C.F.R. § 1003.2(b). Accordingly, the motion is denied.

FOR THE BOARD

# Exhibit
# 4



U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

Jobe, Robert B., Esquire
550 Kearny Street, Ste 150
San Francisco, CA 94108-0000

Office of the District Counsel/SFR
P.O. Box 26449
San Francisco, CA 94126-6449

Name: MASSETTI, GIANCARLO                    A77-383-391

Date of this notice: 07/14/2006

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Donna Carr*

Donna Carr
Acting Chief Clerk

Enclosure

Panel Members:
    MILLER, NEIL P.

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the ~~Board~~ of Immigration Appeals

Falls Church, Virginia 22041

File:   A77 383 391 - San Francisco                    Date:

In re: GIANCARLO MASSETTI                              'JUL 1 4 2006

IN ASYLUM PROCEEDINGS

APPEAL

ON BEHALF OF APPLICANT:        Robert B. Jobe, Esquire

ON BEHALF OF DHS:        W. Manning Evans
                         Assistant Chief Counsel

APPLICATION:   Asylum; withholding of removal; Convention Against Torture


ORDER:

PER CURIAM.  This case was last before us on July 7, 2004, when we reversed an Immigration Judge's June 24, 2003, decision granting the applicant's claims for asylum and withholding of removal.  The matter is now before us pursuant to the October 3, 2005, decision of the United States Court of Appeals for the Ninth Circuit ("Circuit Court").  The Circuit Court determined in this "whistleblowing" case that the applicant's actions were directed toward a governing institution rather than against a few specific individuals and as such, per their holding in *Grava v. INS*, 205 F.3d 1177 (9ᵗʰ Cir. 2000), this constituted political activity sufficient to form the basis of persecution on account of political opinion.  *See Massetti v. Gonzales, slip op. at* 2005 WL 2417148 (9ᵗʰ Cir.).  The Circuit Court then remanded this matter to the Board to allow for consideration of whether the retaliation suffered by the applicant rose to the level of persecution.

Upon careful review of the record, we conclude that the numerous job shifts, escalating threats and ultimately a break-in at the applicant's home in which one of the intruders was shot and killed, viewed in light of the Circuit Court's holding is such to rise to the level of persecution. Consequently, we find no basis to sustain the Department of Homeland Security's appeal of the Immigration Judge's grant of asylum and withholding of removal and the appeal will be dismissed.

Accordingly, the Board's decision in this case dated July 7, 2004, is vacated and the Department of Homeland Security's appeal is dismissed.  The applicant is eligible for, and should be granted, asylum, dependent upon the required security checks.

FURTHER ORDER:  Pursuant to 8 C.F.R. § 1003.1(d)(6), the record is remanded to the Immigration Judge for the purpose of allowing the Department of Homeland Security the opportunity to complete or update identity, law enforcement, or security investigations or examinations, and

A77 383 391

further proceedings, if necessary, and for the entry of an order as provided by 8 C.F.R. § 1003.47(h). *See* Background and Security Investigations in Proceedings Before Immigration Judges and the Board of Immigration Appeals, 70 Fed. Reg. 4743, 4752-54 (Jan. 31, 2005).

FOR THE BOARD

# Exhibit
# 5



U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

---

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia  22041*

Jobe, Robert B., Esquire
550 Kearny Street  Suite 150
Suite 150
San Francisco,  CA  94108-0000

Office of the District Counsel/SF
P.O. Box 26449
San Francisco, CA  94126-6449

RECEIVED
JUL 1 2 2004

Name: MASSETTI, GIANCARLO                    A77-383-391

Date of this notice: 07/07/2004

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

Frank Krider
Acting Chief Clerk

Enclosure

Panel Members:
    HOLMES, DAVID B.
    HURWITZ, GERALD S.
    MILLER, NEIL P.

U.S. Department of Justice                                    Deci     o    Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:   A77 383 391 - San Francisco                  Date:          JUL - 7 2004

In re:  GIANCARLO MASSETTI

IN ASYLUM PROCEEDINGS PURSUANT TO 8 C.F.R. § 1208.2(c)

APPEAL

ON BEHALF OF APPLICANT:     Robert B. Jobe, Esquire

ON BEHALF OF DHS:        Allison Taylor
                         Assistant Chief Counsel

APPLICATION:  Asylum, withholding of removal; Convention Against Torture

      The Department of Homeland Security (DHS) appeals an Immigration Judge's June 24, 2003, decision granting the applicant asylum and withholding of removal under sections 208(a) and 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(a), 1231(b)(3). The appeal will be sustained.

      The applicant is a native and citizen of Italy who entered the United States in March 1998, pursuant to the Visa Waiver Pilot Program (Tr. at 8). In her decision below, the Immigration Judge found the applicant eligible for asylum because he had been persecuted based upon his opposition to "political corruption" (I.J. at 14). The Immigration Judge further concluded that the applicant was presumed to have a well-founded fear of persecution if he returned to Italy and that the presumption had not been rebutted. Consequently, she granted asylum and withholding of removal and the present appeal ensued.

      Initially, we note that credibility is not at issue in this case. The Immigration Judge determined that the applicant's testimony was credible and that any discrepancies were more consistent with an honest recollection of actual events than the memorized recital of a fabricated statement. (I.J. at 13). Furthermore, we find that the Immigration Judge provided a thorough and complete rendition of the facts involved in this case. Therefore, we decline to reiterate those facts here.

      On appeal, the DHS argues, in pertinent part, that the applicant failed to demonstrate that any harm he may have suffered in Italy was on account of his political opinion or any other protected ground. In this regard, the DHS contends that the applicant failed to demonstrate that his "whistleblowing" activities against his corrupt superiors in the Italian government constituted political activity. We agree. The United States Ninth Circuit Court of Appeals, within whose jurisdiction this case arises has held that whistleblowing against corrupt government officials can constitute either imputed or express political activity sufficient to form the basis of persecution on account of political opinion. *See Grava v. INS*, 205 F.3d 1177 (9th Cir. 2000); *Desir v. Ilchert*, 840 F.2d 723, 728 (9th Cir. 1988). In *Grava v. INS, supra*, the alien, a police officer, claimed to have suffered persecution because he criticized the government and took actions against

its corruption both in the course of his official actions and otherwise. There was no doubt that the alien received death threats and was forced to leave the country after his actions. The Ninth Circuit held that "where the whistle blows against corrupt government officials, it may constitute political activity sufficient to form the basis of persecution on account of political opinion." *Grava v. INS, supra,* at 1181. The Ninth Circuit explained that "when the alleged corruption is inextricably intertwined with governmental operation, the exposure and prosecution of such an abuse of public trust is necessarily political" (citation omitted). The "salient question" was whether the alien's "actions were directed toward a governing institution, or only against individuals whose corruption was aberrational." *Id.* The alien's position as a law enforcement officer did not disqualify him from asylum because his persecutors were instruments of the government itself. *Id.* at 1181-82.

In the case at bar, we conclude that the applicant has not established that his actions combating his corrupt superiors were directed "toward a governing institution" versus only against those specific individuals involved whose corruption, in the absence of a more pervasive problem, was aberrational. *See Grava v. INS,* at 1181. In this regard, he has not demonstrated that there is pervasive government corruption in Italy. Indeed, as noted by the DHS in their appeal brief, the Italian government has actively intervened to stop corruption and more importantly to this case, one of the applicant's corrupt supervisors was prosecuted, convicted and sentenced to more than 7 years in prison. *See* Exh. 5A. Moreover, although the applicant has endured various false charges placed by his supervisors and an alleged corrupt prosecutor, he has been exonerated of all charges brought against him, and the Italian High Council of Judiciary has investigated the prosecutor's conduct. Accordingly, in light of these actions by the Italian government, any harm that the applicant may have suffered was not shown to be other than by corrupt government officials using their official authority to commit personal, illegal, and corrupted acts, which had no relation to political persecution. In the absence of the requisite nexus to a governing institution, the harm identified by the applicant including work place harassment, job transfers and various threats are more appropriately characterized as personal retribution or retaliation and not persecution on account of political opinion. *See Grava v. INS,* at 1181. In reaching this conclusion, we note that the Italian government as a whole has not been shown to be corrupt, and while such an expansive showing may not be necessary in order to provide the whistleblower with the requisite nexus to a protected ground *i.e.* political opinion, we conclude that there has to be something more than the aberrant actions by the several government officials that the applicant in this case has identified. On the record before us, we do not find that the respondent has met his burden of demonstrating his eligibility for asylum, withholding, or protection under the Convention Against Torture.

Accordingly, in view of the above the following orders will be entered.

ORDER: The appeal is sustained.

FURTHER ORDER: The June 24, 2003, decision by the Immigration Judge is vacated.

_____

FOR THE BOARD

2

# Exhibit
# 6

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
San Francisco, California

File No.:  A 77 383 391                          June 24, 2003

In the Matter of                 )
                                 )
GIANCARLO MASSETTI               )     IN ASYLUM ONLY PROCEEDINGS
                                 )
              Respondent         )

CHARGE:        Visa Waiver Permanent Program.

APPLICATIONS:  Asylum; withholding of removal under the
               Immigration and Nationality Act and the Convention
               Against Torture.

ON BEHALF OF RESPONDENT:          ON BEHALF OF DHS:

Marirose Piciucco                 Kevin R. Lashus
                                  Assistant District Counsel


ORAL DECISION AND ORDER OF THE IMMIGRATION JUDGE

     The respondent is a 38-year-old, single male, native and

citizen of Italy.  The United States Immigration and

Naturalization Services brought the proceedings, commencing with

the filing of the notice of referral with the Immigration Court

(Exhibit 1).

     The respondent filed for relief from removal in the form of

asylum pursuant to Section 208(a) of the Act.  Applications for

asylum shall also be considered as applications for withholding

of removal and protection under the Convention Against Torture.

     Prior to the admission of Form I-589, application for asylum

1

NOV 13 2003

and withholding of removal, and supporting documents, respondents were before me with the contents of the application, including the attached documents and supplements and any corrections thereto were true to the best of his knowledge (Exhibit 2).

STATEMENT OF THE LAW

The burden of proof is on the respondent to establish that he is eligible for asylum or withholding of removal.

To qualify for withholding of removal pursuant to Section 241(b)(3), the respondent must show that his life or freedom would be threatened in the proposed country of removal, on account of race, religion, nationality, membership in a particular social group or political opinion.  The respondent must establish that it is more likely than not that he would be persecuted on the basis of one of the five enumerated grounds.

To qualify for asylum pursuant to Section 208(b) of the Act, respondent needs to establish that he is a refugee as defined in Section 101(a)(42) of the Act.  The respondent may qualify as a refugee either because he has suffered past persecution or because he has a well-founded fear of future persecution.  The respondent shall be found to be a refugee on the basis of past persecution if he can establish that he has suffered persecution in the past in his country of nationality or last habitual residence on account of race, religion, nationality, membership in a particular social group, or political opinion, and that he is unable or unwilling to return to, or avail himself of, the

A 77 383 391                    2                    June 24, 2003

protection of that country.

If it is determined that the respondent has established past persecution, he shall be presumed also to have a well-founded fear of persecution, unless the preponderance of the evidence established since the time that persecution occurred, conditions in the applicant's country of nationality or last habitual residence have changed to such an extent that the respondent no longer has a well-founded fear of being persecuted if he were to return.  The respondent who establishes past persecution, but not a well-founded fear of persecution, will be denied asylum unless the respondent has demonstrated compelling reasons for being unwilling to return to his country of nationality or last habitual residence, arising out of the severity of the past persecution.

The respondent may also establish a well-founded fear of persecution if he can establish that he has a fear of persecution in his country of nationality or last habitual residence on account of one of the five enumerated grounds.  That is, that there is a reasonable possibility of suffering such persecution if he were to return to that country and that he is unable or unwilling to avail himself of the protection of that country because of such fear.

The respondent does not have a well-founded fear of persecution if the respondent could avoid persecution by re-locating to another part of the respondent's country of

nationality or, if stateless, another part of the respondent's
country of last habitual residence, if under all of those
circumstances it would be reasonable to expect the applicant to
do so.

If the persecutor is a government or is government-sponsored
or the respondent has established past persecution, it shall be
presumed that internal relocation would not be reasonable unless
the Service establishes by a preponderance of the evidence that
under all those circumstances, it would be reasonable for the
applicant to relocate.  If the respondent does not establish past
persecution or the persecution is not by a government, nor is
government-sponsored, the respondent bears the burden of
establishing that it would not be reasonable for him to relocate.

The respondent must also establish that he merits asylum and
he exercises discretion.

It is settled that the well-founded fear standard required
for asylum is more generous than the clear probability standard
for withholding of removal.  INS v. Cardoza-Fonseca, 480 U.S. 421
(1987).  The Court will first therefore apply the more liberal
well-founded fear standard when reviewing the respondent's
application because, if he fails to meet this test, it follows
that he necessarily would fail to meet the clear probability test
required for withholding.

The burden of proof is on the alien to establish that he is
eligible for protection pursuant to the Convention Against

A 77 383 391                  4                  June 24, 2003

Torture.

To qualify for withholding of removal under the Convention Against Torture, the alien must establish that it is more likely than not that he would be tortured by, or at the instigation of, or with the consent or acquiescence of a public official or other person acting in an official capacity, if removed to the proposed country of removal.

ANALYSIS

The evidence presented at the hearing consists of respondent's application for asylum and supporting documents (Exhibits 2, 3, and 4, and 6-12); news articles and reports (Exhibit 5); and his own testimony.

The respondent bases his asylum claim on his membership in a particular social group and political opinion.

The respondent testified that he left Italy the first week of April, 1997, and came to the United States in 1997, and arrived permanently in March of 1998.  Respondent testified that in the interim, he was in France and traveled several times between France and the United States, and he testified that he did not return to Italy.

Respondent testified that he left Italy for reasons connected with a decision to not be a part of the corruption in his military department and for reasons connected to his personal security in his life.

He testified that, at the time, he was a captain of a team

fighting corruption within the department. He testified that he came to find out that there was corruption within his own superiors, including a prosecuting attorney in Milan. He testified that, since he obtained material evidence, his life was in danger. He testified that three persons tried to kill him. He testified that on the night of May 8, 1996, early morning of May 9, 1996, at night, three people with knives broke into his house. He testified that he believes that they were certainly looking for tapes in his house that were evidence of the corruption. He testified that they tried to kill him. He testified that he shot in self-defense, and one of the men died right away, a second one died a few hours later in the hospital, and the third escaped from the hospital. He testified that the third person was supposed to be under military surveillance at the hospital, yet he was allowed to escape.

Respondent testified that he denounced the event and clearly stated that he was in possession of evidence regarding the corruption in his own department. He testified that he asked for protection from the government and from the prosecuting attorney Ramondini. He testified that he asked for personal protection, as well as protection from interference. He testified that he asked for military escort, which was not an unusual request. He testified that when he asked the Italian government to protect him, it was denied. (Exhibit 7-A and 7-B)

Respondent testified that there were no other physical

attempts on his life, but he was subjected to an incredible amount of personal and professional harassment. He testified that his career and professional life became impossible and he felt daily that his life was in danger because of the lack of presence from the government in his security.

Respondent testified that the person who was supposed to be investigating the corruption, the prosecuting attorney Ramondini Elio, decided to protect the people he was trying to indict. He testified that he even went against the verdict of a Judge Arbazino, who found the respondent's superiors were hostile to him. He testified that the judge acquitted him of trying to extort loaves of bread from a bread maker in a little township near Milan. He testified that this accusation came when he was going to the courthouse to testify against his immediate superior Granata. He testified that at the end of the trial, Granata was convicted of the corruption and sentenced to seven years, based solely on respondent's investigation and testimony. Respondent testified that he has never extorted bread loaves from a baker outside of Milan, and has never been a kleptomaniac. He testified that he had visited the bakery because a friend of his lives near there. He testified that he was acquitted and the judge noted the hostility of his supervisors toward him.

Respondent testified that the acquittal was the beginning. He testified that the case was re-opened by Ramondini and re-investigated. He testified that he then came to know of the

A 77 383 391                    7                    June 24, 2003

relationship between his corrupt superiors and Ramondini.  He
testified that he bugged the office of Ramondini as part of his
job.  He testified that the bugging was illegal because it was
not authorized by a judge.  He testified that he didn't get the
judge's authorization because he would have to go through the
district attorney Ramondini.  He testified that when he tapped
the office, he discovered that Ramondini was asking his
colleagues to find ways to accuse him of extortion and to be sure
that his connection with respondent's superiors would be
undiscovered.  He testified that he has placed a copy of the tape
in the United States and another copy in a secret place in Italy.
He testified that his bugging was never discovered.

Respondent testified that he was charged again between
September and November of 1996, with military extortion for the
bread.  He testified that he was notified in January of 1997.  He
testified that in July of 1997, he was acquitted by Judge Leo,
with a final judgment and all the charges were declared void
because of a breach of procedure by Ramondini.  That is, he re-
opened the previous case without asking the earlier judge to re-
open the case.  Respondent testified again that he had not
extorted bread.

Respondent testified that at the end of 1998, the case was
re-opened, with the bread charge and the extortion of pens from
another place.  He testified that the judgment was entered a few
months ago, with a ruling that a breach of procedure by Ramondini

A 77 383 391                        8                   June 24, 2003

stopped the process without a determination of guilt or innocence. He testified that the charges could be brought again. He testified that he did not extort bread or pens.

Respondent testified that even before he left his country, he sent a personal file to the mass media.

Respondent testified that he did not seek, nor was he granted, any legal status in France. He testified that he contacted an attorney to see if he could stay, but it was not productive. He testified that, in the meantime, Italian-American friends of his helped him to come to the United States.

Respondent testified that he believes that Ramondini spent ten years trying to convict him for the extortion of bread, to force him to return to his country to defend himself. He testified that Ramondini wants him physically present in Italy so that his life would be in danger again. He testified that Ramondini is still district attorney, but was recently moved to the archives.

Respondent testified that he has parents and a sister in Italy. He testified that they live in central Italy, five hours from Milan. The respondent testified that, after he left Italy, his superiors went several times to visit his family, and asked and begged that he return and that they reveal his whereabouts. He testified that his father strongly declined to give any information.

Respondent testified that the problem with corruption,

although widespread, is when those fighting against it don't receive protection.  He testified that he believes that democracy is shown by how the government reacts to the problem of corruption.  Respondent testified that he was not supported by democratic government when he was left completely alone to fight against the corruption and to protect his own life.

Respondent testified that if, returned to Italy, the same thing would happen to him that has happened to Italian judges who fight corruption, that is he would be killed.  He testified that Judge Falcone and Judge Borselino were killed.  He testified that big and small criminal behavior is behind any corruption.

Respondent testified that he cannot move to any other place in Italy and be safe because his military department is the most powerful military department in Italy.

On cross-examination, respondent testified that he has never been arrested and never been tortured.  He testified that he has not been physically abused by his ex-superior Granata. Respondent testified that in 1991, he was abused in the barracks by Granata.  He testified that in May of 1996, he was not injured because he shot the intruders.

Respondent testified that he has no final convictions.  He testified that he was once convicted and sentenced to three years, two months.  He testified that he was convicted of extortion by a military officer, but this was overturned.

Respondent testified that his life was threatened in 1996

A 77 383 391                    10                    June 24, 2003

and never again because he left.

Respondent admitted that he came to Chicago twice in 1995, and again on April 23, 1996 to Miami on United Airlines, with authorization to stay until July of that year. Respondent testified that he flew from Miami the night of May 7, 1996 and arrived in Milan on early morning of May 8, 1996. Respondent made a statement to the police the next day in which he asked for protection regarding the break-in on the night of May 9, 1996, written on May 9, 1996. (Exhibit 7-A) Respondent testified that the break-in occurred on the night of May 8 to the morning of May 9, after he arrived in the early morning of May 9.

Respondent testified that he did not work that day and that he could not remember if he went shopping. Respondent testified that he received a disciplinary note that he kept his military gun and had not turned it in before his trip. He testified that he wanted to keep the gun in the house because he had the evidence. He testified that he went to the barracks that day regarding the note. He testified that they knew when he was returning and that he returned to the barracks. Respondent was unable to address why he didn't initially state that he went to the barracks when asked if he went to work.

Respondent testified that he got his job in investigations because he is good at it. Respondent testified that he was suspended and transferred twice when his superiors discovered the scope of his investigation.

A 77 383 391                    11                    June 24, 2003

Respondent testified that he doesn't think the men who came in were military, part of the police, or government. He testified that he thinks they knew he was in the military. When asked why they would have attacked him with knives, he testified that this was because the guns were too noisy. When asked as to why they would attack him with knives when he had a gun, he testified that they probably didn't know he had a gun. He testified that he made a police report and the police arrested one man who was not killed, and he escaped and has not been re-arrested.

Respondent re-entered the United States in July of 1996 until August of 1996. He testified that he did not request asylum because he wanted to inform the Italian mass media about what was happening. He testified that he returned to Italy from August of 1996 to April of 1997. Respondent returned to the United States on April 27, 1997. He testified that he did go to France at one point and inquired about asylum there. Respondent testified that this was just a consultation.

Respondent came to the United States on April 22, 1997 and left on July 6, 1997, and returned to France. Respondent testified that he investigated the possibility of asylum, but was awaiting documents. Respondent was in France from July to November of 1997. He testified that he went to Houston to come to San Francisco. He testified that he could only stay three months because of the visa. He testified that he knew the next

time he returned he would have all the documents from his family and his attorney.

Respondent testified that he never returned to Italy after April 1, 1997. He testified that he never received any correspondence from the Italian government or the military while he was in the United States. He testified that his family was visited by the military. He testified that he retired from the military, offering his resignation in March of 1997. He testified that the military officers said that they were looking for him regarding the investigative file that he had sent to the mass media. He testified that he had sent them a copy of the file also. He testified that he still has the original documents and the tapes.

Respondent last entered the United States in March of 1998. He testified that the last time he spoke to his family was the day before the last day of hearing and the day before that. He testified that his family never sent him any letters. He testified that no officials have visited his house in the last seven to eight months.

The Court concludes that the respondent's testimony is credible and that any inconsistencies are more consistent with an honest recollection of actual events, than the memorized recital of a fabricated statement. The Court also concludes that any inconsistencies are not pivotal to respondent's claim for asylum.

After careful analysis of all the documentary and

testimonial evidence, the Court concludes the respondent has met his burden of establishing by specific, direct, and credible evidence that he is persecuted based upon his political opinion, that is, his opposition to political corruption.

Thus, the Court concludes the respondent has suffered past persecution in Italy and is also presumed to have a well-founded fear of persecution. The Court also concludes the respondent established a well-founded fear of persecution, that is, that there is a reasonable possibility of suffering such persecution if he were to return to Italy and that he is unable to avail himself of the protection of the government of Italy.

The Court concludes that the preponderance of the evidence does not establish that, since the time the persecution occurred, conditions in his home country have changed to such an extent that the respondent no longer has a well-founded fear of future persecution. Further considering the threats to the respondent's life, the Court concludes the respondent has demonstrated compelling reasons for his unwillingness to return to Italy.

The Court further concludes that the persecutor is the government and that the respondent's established persecution in the past and that internal relocation would not be reasonable, based upon the circumstances discussed above.

Thus, the Court concludes the respondent is statutorily eligible for asylum. The Court exercises its discretion in granting his application for asylum.

A 77 383 391                    14                    June 24, 2003

The Court also concludes the respondent is eligible for withholding of removal under the Immigration and Nationality Act.

<u>ORDER</u>

The respondent's application for asylum is hereby granted.

MARILYN J. TEETER
Immigration Judge

A 77 383 391                    15                    June 24, 2003

Exhibit
7

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
ELOY, AZ

LAW OFFICE OF ROBERT B. JOBE
JOBE, ROBERT B.
550 KEARNY ST., STE. 150
SAN FRANCISCO, CA  94108



RE: CARDOSO-TLASECA, ROGELIO
INMATE NO:

NOTICE OF HEARING IN REMOVAL PROCEEDINGS

DATE OF NOTICE:  Jul 23, 2007
FILE: A78-467-817

You are hereby notified that a hearing in this case is scheduled/rescheduled
before an Immigration Court on Aug 29, 2007 at 1:30 P.M. at

    1705 EAST HANNA RD., SUITE 366
    ELOY, AZ  85231.

You may be represented in this proceeding at no expense to the Government by an
attorney or other individual who is authorized and qualified to represent
persons before an Immigration Court.  If you wish to be represented, your
attorney or representative should appear with you at the scheduled hearing.

Except as otherwise ordered by an Immigration Judge, any motions (including
motions for continuances and motions to withdraw as counsel), applications, or
other correspondence concerning this case should be filed with the Immigration
Court at:    1705 E. HANNA RD.
             ELOY, AZ  85231

at least 10 days prior to the scheduled hearing.  Evidence of payment of
appropriate filing fees must be included.

ANYONE EXPECTING TO ENTER THE FACILITY IN ORDER TO APPEAR AT THE IMMIGRATION
HEARING IS SUBJECT TO CORRECTIONS DEPARTMENT POLICIES AND PROCEDURES REGARDING
ENTRY.  CONTACT THE SECURITY OFFICE AT THIS PRISON IN ADVANCE OF THE DAY OF THE
HEARING FOR FURTHER SPECIFIC INFORMATION ABOUT ENTRY GUIDLINES.

For information regarding the status of your case, call toll free
1-800-898-7180 OR 703-305-1662.

_____
                    CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY:  MAIL (M)    PERSONAL SERVICE (P)
TO: [ ] ALIEN  [ ] ALIEN c/o Custodial Officer  [ ] ALIEN/s ATT/REP  [ ] DHS
DATE: 7/23/07      BY: COURT STAFF
    Attachments:  [ ] EOIR-33  [ ] EOIR- 28  [ ] Legal Services List  [ ] Other
                                                                        3Y